UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x
CERTAIN INTERESTED UNDERWRITERS AT  :
LLOYD'S LONDON,                    :
                                    :  Docket No.:
             Plaintiff,      :
                                    :
   -against-                    :  **COMPLAINT FOR**
                                    :  **DECLARATORY**
RHG MANPOWER INC, KATHERINE LEFAVRE, :  **JUDGMENT**
SEBASTIAN LEFAVRE, ROCKLEDGE SCAFFOLD :
CORP., JOHN/JANE DOES 1-10 (said names being :
fictitious), and JOHN ROE CORPS. 1-10 (said names :
being fictitious),                  :
                                    :
             Defendants.     :
---------------------------------------------------------------------- :
                                    x

      Plaintiff CERTAIN INTERESTED UNDERWRITERS AT LLOYD'S LONDON ("Underwriters" or "Plaintiff"), by and through its attorneys, and for its Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 and 2202 against Defendants, RHG MANPOWER INC. ("RHG") and various notice defendants described below, states as follows:

## BACKGROUND

      1.     This is an action for declaratory relief seeking to settle important questions and to establish that all general liability and excess policies (collectively the "Policies") issued to RHG by Underwriters are void *ab initio* as a result of material misrepresentations made by RHG in obtaining said insurance policies.

      2.     In its application for the Policies, RHG states unequivocally that it is 100% General Contractor with RHG's only payroll being for the "Supervisory" class of work. See a true and correct copy of RHG's application for cover, signed August 16, 2017, attached hereto as Exhibit "A." Further, RHG notes in its application that it does not hire "Day Laborers or Casual Laborers." See Id.

1

3. RHG held themselves out as a general contractor without direct employees performing construction work on construction sites.

4. Underwriters conducted analysis and provided a premium based on RHG's representations.

5. On information and belief, RHG has direct employees.

6. On information and belief, RHG is not a general contractor.

7. On information and belief, RHG is a subcontractor.

8. RHG representations regarding the nature of RHG's work, RHG's representation that they were a general contractor, and RHG's representation that they had no direct employees or payroll beyond supervisory employees, all constitute material misrepresentations.

9. Underwriters analyzed and underwrote the Policies based on RHG's representations that they were 100% a general contractor with payroll limited to supervisory workers.

10. Underwriters calculated the premium RHG would pay for the Policies based on RHG's representations

11. Underwriters would not have issued the Policies as they stand if it was known that RHG directly employed laborers on construction projects.

12. Underwriters would not have issued the Policies as they stand if it was known that RHG was a subcontractor and not 100% a general contractor.

13. The Policies should be declared void *ab initio* based on the material misrepresentations made by RHG to obtain the Policies.

## THE POLICIES

14. RHG obtained a general liability insurance policy (the "General Liability Policy") from Underwriters based on the above stated material misrepresentations.

15. The General Liability Policy was issued with policy limits of $1,000,000 per occurrence and $2,000,000 general aggregate limit.

16. The General Liability Policy was issued with a policy number of 10268L170375.

17. The General Liability Policy had a policy period from August 16, 2017 to August 16, 2018.

18. RHG obtained an excess insurance policy (the "Excess Policy") from Underwriters based on the material misrepresentation that RHG was solely a general contractor who did not employee any construction labor.

19. The Excess Policy was issued with policy limits of $4,000,000 per occurrence and general aggregate limit.

20. The Excess Policy was issued with a policy number of 10268L170376.

21. The Excess Policy had a policy period from August 16, 2017 to August 16, 2018.

## PARTIES

22. Plaintiff Underwriters are underwriters to the Policies.

23. Defendant RHG is the named insured under the Policies.

24. Defendant RHG was and still is a domestic corporation duly authorized and existing under the laws of the state of New York.

25. Defendant RHG maintained a principal place of business located at 19208 Jamaica Avenue, Queens, New York 11423.

26. Defendant RHG maintained a principal place of business located at 1676 East 19th Street, Brooklyn, New York 11229.

27. That at all times hereinafter mentioned, Defendant RHG transacted business in the State of New York.

28. Defendants Katherine Lafavre and Sebastian Lefavre (collectively "Lefavre") are notice defendants to the instant action as potential and alleged rights of Lefavre may be affected by the judicial declaration requested herein.

29. Defendants Lefavre are residents of the State of New York residing in Kings County New York.

30. Defendant 500 Rockledge Scaffold Corp. ("Rockledge") is a notice defendant to the instant action as potential and alleged rights of Rockledge may be affected by the judicial declaration requested herein.

31. Defendant Rockledge was and still is a domestic corporation duly authorized and existing under the laws of the State of New York.

32. Defendant Rockledge was and still is a foreign corporation duly authorized and existing under the laws of the state of New York.

33. Defendants, John Does 1-10, are fictitious names for individuals who are unknown and may be notice defendants.

34. Defendants, John Roe Corps 1-10, are fictitious names for businesses, partnerships, corporations, and/or legal entities, who are unknown and may be notice defendants.

**JURISDICTION AND VENUE**

35. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1332(a)(1) and 1332(c)(1), because there is complete diversity between Underwriters and all defendants, and the amount in controversy, exclusive of interest, exceeds $75,000.

36. This Court has personal jurisdiction over the Defendants because Defendants regularly conduct business in New York and/or reside in New York.

37. This Court has the power to issue a declaratory judgment regarding Underwriters' rights and obligations under the Policy under 28 U.S.C. §§ 2201 and 2202.

38. This Court is a proper venue under 28 U.S.C. § 1391(b)(1), because Defendant RHG is located in this district.

39. The dispute exists as to whether the Policies are void *ab initio* as a result of RHG's material misrepresentation, among other disputes, there is an actual case or controversy between the parties.

**COUNT I**

**The Policies Should Be Declared Void *ab initio* As A Result of Defendant RHG's Material Misrepresentations Made With Intent To Defraud Underwriters Into Issuing The Policies**

40. Underwriters incorporate by reference paragraphs 1-43 as if fully set forth in this count.

41. On or about August 16, 2017, Defendant RHG submitted an application to Underwriters for policies to afford coverage for Commercial General Liability and for Excess Coverage.

42. On this application, among other material misrepresentations, Defendant RHG noted the following material misrepresentations:

- Defendant RHG was 100% a general contractor;

- Defendant RHG's payroll was limited to supervisory class of work; and

- Defendant RHG does not hire "Day Laborers or Casual Laborers."

See *e.g.* Exhibit "A".

43. Defendant RHG knew that it was a false statement to claim they were 100% a general contractor when Defendant RHG made the statement.[1]

44. Defendant RHG made the statement that they were 100% a general contractor with the intent to defraud Underwriters.

45. Defendant RHG made the statement that they were 100% a general contractor with the intent to obtain the Policies from Underwriters.

46. Defendant RHG's statement that they were 100% a general contractor constitutes a material misrepresentation.

47. If Underwriters knew that Defendant RHG was not 100% a general contractor, Underwriters would not have entered into the contractual Policies with Defendant RHG.

48. Defendant RHG materially misrepresented that RHG's only payroll was for supervisory work in order to obtain the Policies.[2]

---

[1] The risk, underwriting, and chances of a claim are different when there are direct employees on site conducting construction work. General contractors generally sub-contract to other contractors to complete work. A subcontractor is customarily contractually required to indemnify and provide insurance coverage for both the general contractor and owner, while a general contractor's contractual indemnification and insurance responsibilities will likely be limited to an owner. For these and other reasons, the risks and calculations are different for a general contractor versus a subcontractor.

[2] By *inter alia* stating that the entirety of RHG's payroll was for "Supervisory" class of payroll, RHG represented that it did not retain direct employees to conduct labor on construction sites. Again, the underwriting calculus is different because of the risks and chances of claims associated with direct employees on site.

49. Defendant RHG knew that it was a false statement to claim that RHG's only payroll was for supervisory work when Defendant RHG made the statement.

50. Defendant RHG made the statement that RHG's only payroll was for supervisory work with the intent to defraud Underwriters.

51. Defendant RHG made the statement that RHG's only payroll was for supervisory work with the intent to obtain the Policies from Underwriters.

52. Defendant RHG's statement that RHG's only payroll was for supervisory work constitutes a material misrepresentation.

53. If Underwriters knew that Defendant RHG had payroll and direct employees beyond supervisory payroll and workers, Underwriters would not have entered into the contractual Policies with Defendant RHG.

54. Defendant RHG materially misrepresented that RHG did not hire "Day Laborers or Casual Laborers."

55. Defendant RHG knew that it was a false statement to claim that RHG did not hire "Day Laborers or Casual Laborers."

56. Defendant RHG made the statement that RHG did not hire "Day Laborers or Casual Laborers" with the intent to defraud Underwriters.

57. Defendant RHG made the statement that RHG did not hire "Day Laborers or Casual Laborers" with the intent to obtain the Policies from Underwriters.

58. Defendant RHG's statement that RHG did not hire "Day Laborers or Casual Laborers" constitutes a material misrepresentation.

59. If Underwriters knew that Defendant RHG hired "Day Laborers or Casual Laborers," Underwriters would not have entered into the contractual Policies with Defendant RHG.

60. The aforementioned misrepresentations or non-disclosures, alone or together, were material to Underwriters because they affected the risk assumed by Underwriters.

61. Underwriters would not have issued the Policies to Defendant RHG if Underwriters had known of the aforementioned fraudulent misrepresentations and non-disclosures made by Defendant RHG.

62. Upon information and belief, Defendant RHG made the above material misrepresentations with the intent to deceive Underwriters.

63. Upon information and belief, Defendant RHG withheld the true facts, as aforesaid, for the purpose of inducing Underwriters to issue the Policies, which Underwriters might not have otherwise issued.

64. Upon information and belief, RHG is not a general contractor.

65. Upon information and belief, RHG is a subcontractor.

66. Upon information and belief, RHG employs direct laborers to entities it contracts as subcontract with.

67. Upon information and belief, RHG employs day laborers and casual laborers to entities it contracts as subcontract with.

68. RHG did not hire "Day Laborers or Casual Laborers."

69. Upon information and belief, RHG employs and provides direct laborers to entities it contracts with and does not supervise RHG's employees work.

70. Upon information and belief, RHG employs and provides direct laborers to entities it contracts with the entities thereafter manage RHG's employees work.

71. On the basis of the material misrepresentations and non-disclosures made by Defendant RHG in their application to obtain the Policies, Underwriters are entitled to void the Policies *ab initio*.

72. Underwriters have no adequate remedy at law.

## COUNT II

### Underwriters Have No Obligations To Provide Defense or Indemnification to Defendant RHG or Any Other Entity As The Policies Were Obtained as a Result of Defendants' Material Misrepresentations And Are Void *ab initio*

73. Underwriters incorporates by reference paragraphs 1-76 as if fully set forth in this count.

74. On the basis of the foregoing, Underwriters are entitled to a judgment declaring that Underwriters have no obligation to provide defense or indemnification to Defendant RHG or any other entity seeking defense or indemnification under the Policies, as a result of the Policies being void *ab initio*.

75. Underwriters have no adequate remedy at law.

**WHEREFORE** Underwriters seeks a declaration and judgment stating:

A. That the Policies are void *ab initio* and Underwriters retroactively have no obligations to Defendant RHG or any other entity or individual resulting from the Policies;

B. That Underwriters have no obligations to Defendants to defend, indemnify, or take any action regarding any action presently brought or that may be brought in the future, or any other claim brought against the Policies;

C. For any other relief that this Court deems just and equitable.

Dated: New York, New York
June 28, 2019

                               FURMAN KORNFELD & BRENNAN LLP

By:   */s/ Corey M. Cohen*
      A. Michael Furman, Esq.
      Andrew R. Jones, Esq.
      Corey M. Cohen, Esq.
      *Attorney for Plaintiffs*
      CERTAIN INTERESTED UNDERWRITERS AT LLOYD'S LONDON
      61 Broadway, 26th Floor
      New York, New York 10006
      (212) 867-4100
      FKB File No.: 406.035